# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:24-CV-00040-CHB-CHL

**TERRICA WATSON,**                                                                 **Plaintiff,**

**v.**

**AMERICO FINANCIAL LIFE AND ANNUITY INS. CO.,**            **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Parties' Agreed Motion to Approve Settlement (DN 12) and supplement to the same (DN 18). The motion was referred to the undersigned for report and recommendation. (DN 14.)

Plaintiff Terrica Watson brought this action in her capacity as mother, guardian, and next friend of minor child G.G. against Defendant Americo Financial Life and Annuity Insurance Company ("Americo") seeking to recover life insurance benefits Plaintiff believed were owed to G.G. as a result of the death of her father, Timothy Greer ("Greer"). (DN 1-1, at PageID # 9.) Plaintiff alleged that though her counsel contacted Americo about potential life insurance policies related to Greer, Americo only acknowledged G.G.'s status as a potential beneficiary and did not immediately pay any benefits because "it was still conducting an investigation." (*Id.* at 10.) Plaintiff filed suit against Americo in state court on December 19, 2023, and Americo removed the matter to this Court in January 2024. (*Id.* at 9; DN 1.) The Parties notified the Court regarding a potential settlement of this matter shortly before the telephonic scheduling conference set to occur on April 9, 2024. (DNs 7, 8.) Thus, there was only minimal activity in this Court after removal. (DNs 1, 5, 7, 8, 9, 10, 11.)

In their motion, the Parties advised that Plaintiff as next friend of her child G.G. has reached a settlement with Americo in this matter. (DN 12.) While the settlement agreement itself does not appear in the record, the Parties' motion outlines the essential terms of the same. (*Id.*) Specifically, the settlement will fully resolve G.G.'s claim to life insurance benefits from two policies totaling $201,000.00 in the form of a payout of $120,600.00, or sixty percent of the total value of the policies. (*Id.* at PageID # 60-61.) As set forth in the supplement to the motion, while less than the face value of the policies, this amount represents the full possible recovery for G.G. under the policies because G.G. is one of the five total beneficiaries to the policies at issue, with the other four set to receive 10% each. (DN 18, at PageID # 73.) From the settlement amount, Plaintiff's counsel will take 40% consistent with the contingency fee agreement between them for a total of $48,665.85 plus an additional $425.85 in costs and expenses. Thus, G.G. will receive a total of $71,934.15 from the settlement, which Plaintiff proposes to use to purchase a fixed income annuity from the Standard Insurance Company that will provide a ten-year period certain payout starting when G.G. turns eighteen years old. (DN 12, at PageID # 59-62; DN 18, at PageID # 73-74, 78.) The Parties' represented that pursuant to the terms of the annuity, its minimum guaranteed value is $86,321.00 but its expected value will be $361,070.00. (DN 12, at PageID # 62.) The Parties requested that the Court approve the amount of the settlement, including the amount of the attorney's fee to Plaintiff's counsel, and approve the purchase of the annuity with the settlement proceeds.

In cases involving legal claims brought by minors in a federal forum, this Court has a duty under Sixth Circuit case law to "ma[k]e an independent determination" that any proposed settlement is "in the minor's best interest." *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997). Specifically,

>when a settlement involves a minor child, a stipulation of dismissal under Rule 41(a)(1)(A)(ii), which is otherwise self-executing and does not require judicial approval in the form of an order, does not operate to dismiss a case unless and until the district court "make[s] an independent determination that the settlement [is] in the minor's best interest." Authority for denying the self-executing nature of a Rule 41 stipulation is based in a federal district court's inherent authority to 'safeguard interests of persons entitled to the court's special protection,' such as minor children.

*Kiel by Kiel v. Barton*, No. 09-CV-15053, 2011 WL 13206189, at *1 (E.D. Mich. Jan. 31, 2011) (quoting in part *Green*, 111 F.3d at 1301) (citations omitted). While the Parties have not yet tendered such a stipulation of dismissal, in anticipation of their doing so, the undersigned will address the settlement of the minor herein.

While *Green* does not provide a list of factors to consider when determining whether a settlement is in the minor's "best interest," some district courts conducting this analysis have looked to other contexts where the court reviews a settlement agreement for guidance. For example, in the class action context, courts routinely assess whether proposed settlements that will resolve the legal claims of absent class members are "fair, reasonable, and adequate." *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (quoting Fed. R. Civ. P. 23(e)(2)). In doing so, they consider various factors such as (1) the "risk of fraud or collusion"; (2) the "complexity, expense and likely duration of the litigation"; (3) the "amount of discovery engaged in by the parties"; (4) the "likelihood of success on the merits"; (5) the "opinions of class counsel and class representatives"; (6) the "reaction of absent class members"; and (7) the "public interest." *Id.* at 894-95 (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *see Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 965 (E.D. Mich. 2021) (noting that courts consider "as applicable" the same seven factors when determining whether a settlement resolving claims under the Fair Labor Standards Act is

3

"fair and reasonable"). Most of these factors and concerns are instructive to the instant inquiry before the Court, and the Court will consider the ones it deems relevant below.

Here, there is no evidence before the Court of fraud, collusion, or any other kind of bad faith that might cause the undersigned concern that G.G. is not getting a fair settlement. Based on the Parties' representations, the settlement consists of the full value of what G.G. would have been entitled to had the instant lawsuit been resolved in G.G.'s favor. The timing of the settlement—before significant expenses were incurred through discovery, depositions, expert witnesses, etc.—also weighs in favor of approving the settlement at this juncture and avoiding what would have inevitably been a year or more of delay while the Parties brought this case to its final conclusion. While there is no evidence before the Court that the legal issues involved in this case would have been unduly complex or nuanced, the fact remains that nearly all litigation is time-consuming and expensive and avoiding that expense is in G.G.'s best interest, especially where the full benefit of the possible result is available to G.G. without that time and effort. Similarly while there is no evidence before the Court about what specific legal issues would have been involved had this litigation progressed so as to allow the undersigned to weigh Plaintiff's likelihood of success on the merits, it is an unassailable fact that any litigation carries the risk that a plaintiff will recover nothing. For these reasons, the undersigned finds that the settlement and settlement amount is in G.G.'s best interests.

But the Court must also make an "[i]ndependent investigation . . . as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670 (6th Cir. 1988) (citing *Dixon v. United States*, 197 F. Supp. 798, 802 (W.D.S.C. 1961)). In other contexts, courts have found that a reasonable attorney fee is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers."

4

*Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) (discussing reasonable attorney fees in the FLSA context); *see Geier*, 372 F.3d at 791 (applying the same standard in a federal civil rights action). While at first glance, awarding Plaintiff's counsel the 40% contingency fee to which Plaintiff agreed seems generous, the undersigned concludes that under the circumstances of this case, it is fair and reasonable. While little action has taken place before this Court, in the supplement to the motion, Plaintiff details the significant efforts that her counsel expended to achieve this result; counsel estimates they have spent roughly 60-65 hours on this matter between pre-suit and post-suit tasks, including the process of advising Plaintiff regarding and arranging for the annuity that Plaintiff intends to purchase with the settlement proceeds. (DN 18, at PageID # 74-76.) Counsel took this case on a contingency fee basis, meaning that if Plaintiff recovered nothing, neither did her counsel. Counsel, who have a combined thirty years of legal experience, achieved for G.G. the best possible result. Thus, the undersigned finds that it is appropriate to approve the proposed fee pursuant to the percentage-of-the-fund method used by courts to determine the fairness of a fee award. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The percentage-of-the-fund method requires a court to calculate the ratio between the fees that the attorneys in a case will receive as part of a settlement and the total benefit to be awarded to the plaintiffs. *Id.* at 282. Here, that ratio is 40%, which, while higher than ratios found presumptively acceptable in other contexts, *see* DN 140, at 1187-88, *Hargrove v. Jefferson Cnty. Bd. of Educ.*, No. 3:16-cv-806-DJH-RSE (entered Mar. 31, 2022), the undersigned finds is appropriate given the factors set forth above.

Finally, the undersigned finds that the purchase of the annuity detailed in the motion is appropriate. As noted by the Parties, if the settlement proceeds were placed in a savings account with a five percent interest rate, G.G. would receive only $249,471.38 by age 18, less than the prospective payout under the annuity. (DN 18, at PageID # 79 n.8.) The annuity appears to be a financially responsible method of safeguarding the funds until G.G. comes of age and can use them.

Accordingly,

the undersigned hereby **RECOMMENDS** that the Parties' Agreed Motion to Approve Settlement (DN 12), as supplemented (DN 18), be **GRANTED**, and that the settlement be **APPROVED**.

*Colin H Lindsay, Magistrate Judge*
*United States District Court*

cc: Counsel of record
August 23, 2024

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).